Today is 2014-7134. Sucic v. McDonald. Tell me how to say your name. Sucic. Sucic v. McDonald. Mr. Carpenter, you may proceed. Thank you, Your Honor. Can you please support Kenneth Carpenter appearing on behalf of Mr. Jack Sucic? In this case, Your Honor, the Veterans Court determined that the VA could lawfully ignore the Board's 1995 referral of Mr. Sucic's claim for reopening of his previously denied claim of service connection for post-traumatic stress disorder. Under the correct interpretation of the provisions of 19.9 and 1995, the Board could not have lawfully overlooked the Board's referral of Mr. Sucic's request to reopen his claim for post-traumatic stress disorder. This question was decided by the Veterans Court in Godfrey v. Brown in the same year that the Board made its referral. In Godfrey, the Board determined that the issue of service connection for residuals of a right ankle fracture had, in fact, been raised by the Veteran, and that the Board properly referred the matter to Mr. Carpenter. So, assuming that the regional office had undertaken the review that you say they should have, what evidence was there that they were supposed to consider? Was there anything new that had been submitted or had been not reviewed subsequent to December 92? Yes. In March of 1993, the Veteran informed or submitted a statement in support of claims in the record at JA 16 to 17, informing the VA that he had been treated for a nervous condition, and in his submission, he indicated that he had been hospitalized for that condition at the VA Medical Center in Columbia, Missouri. So, he had been hospitalized for alcohol and some drug abuse, but I don't see that there was a discussion as to any psychiatric disorder or any mention of the PTSD. No, Your Honor, and in fact, if the VA had acted as it was required to act by law, this matter could have been terminated by that determination and a denial of the request for reopening because that medical record that he referred to was, in fact, not at that time new and material evidence. However, in this case, the issue is whether or not the Board had made a lawful referral, an order, directing the VA to take action, and the VA took no action, and it is that failure to take action that... A remand is certainly an order to take action. Is a referral an order to take action or simply... Under the Veterans Court decision in Godfrey, it is, and under the VA's later amendment to the same regulation in 2011, a referral has the same effect as a remand. The significance is, in this case, in the same year that this referral was made, the Veterans Court decided in Godfrey that very question, and it was, in fact, Your Honor, based upon the VA's practice that they treated referrals by the Board in the same manner that they treated remands, and as a consequence, the VA was under a procedural obligation to take action. No action was taken in this case. That constitutes the procedural error that arose under the Veterans Court decision in this matter, because he took a direct appeal of the effective date... Doesn't the 2011 reg treat remands and referrals differently? They do treat them differently, Your Honor. How can you say it's the same thing? Because it has the same procedural effect. It requires action to be taken upon the referral. In other words, this would be a totally useless regulation if the provisions of 19.9 were read that the VA... Under the new reg, what action does the Board have to take? I'm sorry, what action does the VA have to take upon receipt of the referral? Well, I'm not sure it specifies what action. The language of the referral in 1995 was to take appropriate action. Our argument is that taking no action is not taking appropriate action. I ask you, is no action always inappropriate? Yes, Your Honor. Because as Judge Reyna pointed out, in fact, there was a statement in support of claim that referred to a specific period of hospitalization that had they taken action on that, could have easily been disposed of. How do we know that? How do we know that that would have been disposed of? Are you saying that when you say take appropriate action, that that includes issuing a detailed report as to the action you took? Or maybe they did look at it and say there's nothing here, let's move on. No, Your Honor. When a veteran makes a claim, and we assert that the statement in support of claim from March of 1993 was a claim to reopen, and the requirement by statute is to make a decision on that request, and the disposition of... We know that that's true for a remand. We're dealing with a referral. No, Your Honor. It's independent of a remand. The March 1993 imposed an affirmative duty on the VA based upon the statement in support of claim for the VA to take action, regardless of what the board did in 1995. But in this case, the board in 1995 recognized that the VA had taken no action, and specifically referred the matter back to the VA to take appropriate action. And that expressed direction by the board in 1995 was simply ignored. That was a procedural error, and a procedural error... Why was it a procedural error when you say they ignored it? Are you saying that they should have treated the referral as a remand, as we understand a remand now, and there should have been a final decision issued on that claim? Yes, Your Honor. And had that been done, Mr. Susick would have been given his notice of appellate rights. If he didn't appeal within one year, then that decision would have been final. And we would not be here today, because there would be no basis for implicating the provisions of the Meyer decision below. The Meyer decision is predicated on the notion that if the VA... But your argument takes us to a real slippery slope, doesn't it? If we were to find in your favor, which would be on a novel issue that you presented to us, wouldn't we open up for, let's say, a multitude of veterans to say, I never got a final decision. Mine involved a referral, too. I need to go back to court. No, Your Honor, because this case arises in very specific circumstances, in which the board in 1995 recognized the existence of this pending matter and directed the VA to take action. This is not a matter of veterans' sua sponte saying, I never got notice or... What action did they direct them to take? Appropriate action, Your Honor. And they took no action. I assert that no action can never be appropriate. Not in the context of a referral, Your Honor. A referral requires some affirmative action, in this case, to adjudicate... Mr. Carpenter, wouldn't it also help your argument that at the end of this very same opinion, the board informed the veteran that no action is required of the veteran or his representative until they receive further notice? Yes, Your Honor. Doesn't that support the idea that no action is really not okay in this scenario? Yes, Your Honor, because the board specifically informed the veteran and his representative that they need do nothing until the board acted. I have one question for you. You characterize this as you believe that the board was recognizing a claim to reopen. I don't know if you should so limit your argument. Why couldn't this alternatively be looked at as an informal claim? I mean, our jurisprudence and the evolution of jurisprudence on informal claiming seems to include something written on the back of a cocktail napkin and handed to the VA. So why wouldn't the recognition of these contentions in this board proceeding be a new informal claim? If there hadn't been the action that was taken in December of 1992, I believe that would be a correct assertion. Since there was a specific claim made and action taken in December of 1992, then that's a previously denied claim, which I believe moves it into the context of reopening. I don't know that you're right about that. Why? Well, I'm happy to be wrong, Your Honor. Why, Mr. Carpenter, why just because you file a claim for something and it's finally denied, why does your next attempt to seek compensation for the same injury automatically have to qualify as an attempt to reopen as opposed to a new informal claim? Well, Your Honor, perhaps I'm putting more of a label on it than is necessary. This was not an informal claim because it was on a VA form. It was done on a VA form that is a statement in support of claim. It wasn't an informal claim. It was a formal claim. Wait, wait, wait. What was that on the VA form? You don't mean the 1992 or the pre-1992 rating? No, no. In the record, Your Honor, at JA-16, the form used by the veteran in March of 1993, VA form 21-4138, is titled a statement in support of claim. And that is the document. But wouldn't this still be, at best, an informal claim since the claim is not clearly for PTSD benefits? It talks about a nervous condition. That does. Let me ask you how I reconcile one thing about your brief, because there's one thing in your brief that I absolutely hated when I read it. Let me get your brief and look at page 2, footnote 2. Isn't that completely inconsistent with what you're telling me right now? It's something I was thinking, and so my law clerk pointed out footnote 2 to me, and I'm having trouble reconciling your statement in footnote 2 with what you're arguing now. It should be noted the nervous condition with Mr. Susick was being treated for at Columbia-Missouri Medical Center in March of 1995 was not post-traumatic stress disorder. Why the board characterized Mr. Susick's claim as entitlement compensation for post-traumatic stress disorder is unclear from the record. Isn't that your admission that this form on JA-16 you pointed me to, which refers to the medical condition, the nervous condition? Aren't you disavowing, in your brief, the idea that this nervous condition is a claim for PTSD? Well, Your Honor, what I was trying to do in the footnote was to clarify that the board made a characterization of it being a claim for post-traumatic stress disorder, and it was unclear from the record why the board chose to do that. That was the point of the footnote. I am acknowledging that the statement in support of claim does not make a specific reference to post-traumatic stress disorder. But you also say the nervous condition was not PTSD. What was it? It was what was described by the veteran, and all he offered was a nervous condition. So what does your client win here, if we agree with you? I mean, if you're abandoning any type of PTSD dating back to 1993, how are you going to get a service connection going back? I'm not abandoning the post-traumatic stress disorder claim. What I'm suggesting is simply that there was a lack of clarity in the board's decision for why it chose to do what it did when it made the referral, and it made the referral for a specific condition, whereas Mr. Susick's statement in support of claim was for a general condition. What does Mr. Susick get? He should get an order from this court directing the veterans' court to address the issue of whether or not this was or was not a procedural error. The veterans' court evaded applying their rule in Myers. Let's say that happens, and they say, okay, it's a procedural error. We're denying the claim. We're denying anything that happened in 1993. We're denying a claim there. Well, the veterans' court can't do that. All the veterans' court could do was to say that Myers applied or it didn't apply. If they find that it did not apply, then that's a matter for another appeal to this court as to whether or not that was or wasn't a procedural error to fail to comply with the referral. We're well into your rebuttal time, Mr. Carpenter. Would you like to stay for that? I would. Thank you very much. We'll hear from Ms. Gerber, please. May it please the court, I'd like to start first by going to J.A. 1617 and discussing that form. Now, Mr. Susan has claimed that this is the support for reopening his claims of PTSD. What's the citation again? J.A. 1617, Your Honor. This form, however, is not a claim that, and the board and the veterans' court in this appeal looked at this form and said this does not constitute evidence either of a notice of disagreement or human material evidence in support of reopening claims, partly because there is no reference to PTSD as discussed earlier. In addition, this form is for a non-service-connected pension. It is not actually saying, I would like service connection for something. It is asking for pensions. And pension is a benefit only allowed for non-service-connected conditions. So this form, in and of itself, and the board and the veterans' court below made a factual determination that this could not constitute either a request to reopen for PTSD or a new claim. Well, regardless of what they concluded about this form now, in 95, they concluded that, I don't know if it's based on that form or based on something in the hearing. We don't have a transcript from the hearing. We have some printed statement that supposedly was read in. Maybe there were other things stated in the hearing. We don't know. There's no transcript. But all we do know is the board found, as a factual matter, in 95, the veteran has further contended service connection is warranted for post-traumatic stress disorder. You're absolutely right. We don't know if they found that because of the document of JA-16-17. Maybe it was because of something said at the hearing. We don't know. But we do know they made this factual finding. And not only did they make the factual finding, they referred it to the VA, and then they told the veteran, you should do nothing until you hear further from the VA about this. The board also remanded several issues, and this is a good place to discuss the difference between a referral and a remand. When a referral happens under Section 19.9, the board has no jurisdiction. It determines it has no jurisdiction, and it cannot direct the regional office to do any particular thing, and, indeed, it does not create additional requirements. The board frequently, for example, refers unadjudicated claims, correct? Yes, that is the purpose of the referral. Absolutely, Your Honor. It's the purpose of the referral, the proclaimant referral of unadjudicated claims, right? Yes, Your Honor. That's what you're telling me. So this is a referral of an unadjudicated claim. A referral does not, by itself, create a claim. There must be an underlying need by the claimant. The board does not create a claim for the claimant. I'm sorry. The board is recognizing the presence in this case before it of a claim by the claimant and expressly telling him to do nothing until the VA acts. So if normally a referral is most widely used to refer an unadjudicated claim, and the board is recognizing contentions by the veteran here, even though we can't necessarily find them in the tangible record, and then they're telling him not to do anything until the VA acts, I don't see how that isn't the referral of an unadjudicated claim. And then I think we all agree. Wouldn't you at least agree, if this is a referral of an unadjudicated claim, that at that point the RO had to do something? If there was, in fact, a claim, yes, Your Honor. And the requirements for the regional office to adjudicate a claim stem from all the other parts of the statute and the regulations determining what. If there's an informal claim, the regional office asks the claimant to execute it as a formal claim. If there's a formal claim, there would be an adjudication. But Section 19.9 does not by itself create a claim that the regional office has an affirmative duty to do anything. Is non-action considered appropriate action at some point? If there's nothing to adjudicate, yes, Your Honor. And that includes not notifying the veterans? That's correct. If there was nothing before the regional office. If what was referred was nothing. And the court, excuse me, Mr. Susick, has not pointed to anything except for this 1993 document as the basis of a claim. And the veterans court and the board determined that that was not. That's true if you look at a referral as we do now. But back at this time, a referral had more of the makings of a remand. I respectfully, Your Honor, I don't believe so. A remand is a specific tool for the board when it has a claim before it, properly before it. It has jurisdiction, but determines it cannot make a final decision. And so a remand is a specific direction. If it is, for example, on pages JA 19 and 20, saying you need to go get these particular documents, you need to have a new medical examination, and directing the regional office to do particular things. How do you squirrel away with a statement then? Such issue was not developed for appellate review and no action by the board. By the board, it says, is warranted. It says it is referred to the VA regional office for appropriate action. And that seems to me to say there's an open claim. There's something that wasn't done. There's no finality here. It needs to be referred back for appropriate action. Your Honor, as we stated in our brief, it is a bit mystifying why that final sentence is there if, as the Veterans Court determined below, there isn't an open claim. In a brief, you argue that this sentence is mystifying and confusing. But it really isn't. I mean, it clearly says that this is referred back to the VA for appropriate action. When you take it in context of that entire paragraph, the paragraph is saying there's something that didn't happen here. And there's something that's left. There's loose ends. It certainly suggests that the board believed that there was potentially an open claim, an unadjudicated claim. But why would Mr. Susick believe that? Why would Mr. Susick believe that, the veteran, reading this? Believe what? I'm sorry, Your Honor. That he's got an open claim and that the regional office is attending to this. Well, Mr. Susick did not, in fact, submit anything other than this 1993 document, which had its own claim to him. But why would he? The rest of this opinion tells him no action is required of the veteran or his representative until they receive further notice. How can you fault him for not submitting more to establish a claim that the board recognizes he has when you expressly also tell him not to submit more? I don't understand. I apologize, Your Honor, if I sound like I was faulting the claimant for anything. I don't believe there is any fault. The point here is that if there is no claim to be adjudicated by the regional office, the regional office is not required by Section 1929 to adjudicate a claim that isn't, in fact, before it. Although there's a referral timeout. We have a fact finding by the board that the veteran has further contended that service connection is warranted for post-traumatic stress disorder. That is a fact finding made by the board that a veteran is contending this. Okay? I don't know what he's contending or not contending, and nor do I get to review board fact findings. But the board found he was making this contention. Are you then telling me the RO, without him having submitted anything to disavow that contention at the VA, because there was no submission by him because he was told not to submit anything, are you then saying it's okay for the RO to look at it and disregard this board fact finding without a disavowal by him? How does the RO know, for example, what occurred at the hearing? Perhaps at the hearing, he orally made these contentions. I realize that's not part of this record, but it could have been because he's not transcribed. But how can the VA, without seeking additional information from Mr. Susick, decide suddenly that he has not, in fact, made this contention? First, Your Honor, a claimant cannot make a claim, or at least in 1995, could not make a claim orally. It had to be in some form of writing, and that's reflected in this court's decision in Rodriguez. I have this right here, 189 S. 3rd, 1351, from 1999. See, there had to be something on the record in writing from the claimant. The board's statement by itself does not create a claim. Now, the regional office had this 1993 document before it and had already adjudicated a pension claim based upon it. There was a separate claim. This was not a claim concerning the PTAC, but rather the pension benefits, and that that was adjudicated. So finding no open request from the claimant, there was nothing for the regional office to adjudicate. I mean, our desire is to be pro-claimant. Suppose that a veteran walks into the VA and orally makes a claim, clearly, unequivocally, and in this case, suppose they walked into the board and there's actually a transcript. Suppose there's actually a transcript where they walked into the board hearing and the veteran repeatedly, not represented by counsel, says, I should have service connection for PTSD, okay? Repeatedly makes this verbal assertion at the board hearing. Then we have this referral, okay? So now there's actually a transcript of him verbally saying it, but it's not he didn't file something in writing, but there is a transcript in writing. Would the VA then be okay with deciding exactly as they did in this case, according to you, that no claim was actually made and therefore nothing need be done? I'm hesitant to say what the regional office lawyer would not have done in that circumstance. It may have reached out, but would it be required to if there's nothing from the claimant? The claimant comes in orally to the hearing and repeatedly, without a lawyer present in a pro-claimant system, tells the board over and over that he should have service connection for PTSD and it's all transcribed clear as day. Are you telling me that's not the case? That it's not going to amount to an informal claim and that the RO has no obligation to do anything with it? In 1995, an informal claim had to be in writing, Your Honor. And the fact that it was transcribed, that he made these oral statements, doesn't amount to a writing? I have not researched that question, Your Honor. If you would like an answer to that, I can certainly submit something to the court after this argument. I don't know if something written in a transcript could be considered a written informal claim in 1995. I'm sorry, Your Honor. I don't know the answer to that. But it is true that the claim must originate from the claimant in some way. And that is the key here. Well, the board said it did. The board says the veteran has further contended. The board says the claim did originate from the claimant. And the board in this appeal, in this case, and the veterans court below made a factual finding saying we are not bound on referrals for factual findings made by the board previously. It looked through the evidence. It looked at this 1993 document and any other evidence in the record and said between 1992 and 2003, there is nothing that can be construed. And they made a factual finding that is binding on this court and that this court cannot adjudicate. When you respond to Judge Moore and you say that the claim had to have been in writing, had it had to have been on a certain form? An informal claim, no, Your Honor. Okay, so let's go back and look at the March 30, 1993 writing where it says at the very top, Statement in Support of Claim. And the second paragraph, the veteran notes, I also have been treated for a nervous condition since March of 1985. Currently, I am hospitalized for this condition. And then he goes on and talks about the time being effective on March of 1993. Why isn't that a claim for a nervous condition and why wouldn't that be the basis for a referral back to the RO to take a look at this and find out if this nervous condition and give the veteran the opportunity to determine, to show that this nervous condition is due to his post-traumatic stress disorder? The reason why, Your Honor, is as the board and the Veterans Court determined below, this does not constitute any disagreement with the idea that he has only conditions that are non-service connected. This is a request for pension benefits, which are mutually exclusive. No, but later on, later, I mean at this point, he's not trying to establish a service connection. Later on, he is. Now he's saying, look, in 1993, I told you, as far back as 1993, I had this nervous condition and I was hospitalized. There's the evidence. There's the basis for this, for the referral back to the RO. Well, if he said, you're positing, Your Honor, some subsequent statement saying, this is how I have a claim for PTSD. That would be his claim for PTSD. This alone, the board determines, is not requesting service connection and is not new and material evidence concerning PTSD. And as the board found below, it actually referenced not PTSD, but other conditions such as substance abuse, which Your Honor referenced earlier, which are not service connected. Again, this is about a pension benefit for conditions that are not service connectable. And that's what the board and the Veterans Court determined this evidence was, and that's how it made a factual finding that this cannot constitute an open claim that the regional office had to adjudicate. And I see my time has concluded. We respectfully request that the court affirm. Ms. Staten, Court Division. Thank you, Ms. Grover. Mr. Carpenter, you have about a minute and a half left. Do you have anything else you'd like to add? I really do not, Your Honor, unless there's any questions from the panel. Mr. Carpenter, as I understand it, what this arose from was a prior-to-service automobile accident which the veteran said was aggravated by his service. And that was the gravamen of the claim. Which he eventually was found to be entitled to service connection for from 2003 forward. Thank you. Thank you very much, Your Honor. Thank you.